BRYAN *et al. v.* WILLINGHAM-LITTLE STONE CO. *et al.*

No. 14250.   SEPTEMBER 21, 1942.

C. C. *Pittman* and *A. H. Burtz,* for plaintiffs.

*Alston, Foster, Sibley & Miller, Wheeler, Robinson & Thurmond,* and *Watkins Edwards,* for defendants.

GRICE, Justice.   The suit was brought on the theory that none of the mineral interests passed under the several devises, and the title to these therefore is held in equal proportion by the heirs of the testator.   It affirmatively appears from the petition that all the parties plaintiff, either in person or through the ancestor in whose right they claim, had conveyed, before the filing of this suit, all their rights to the mineral interests in various parcels of the entire tract.   In doing so they received in each instance a money consideration.   It is true that the description in their deeds named only the land, but necessarily the sale of the land without any reservation whatever carried with it the mineral interests.   It is also true that it does not appear what a fair and reasonable proportion of the purchase-money received by them would represent these mineral interests.   The petition alleges that such of the mineral interests as passed under the deeds above referred to were of small value, the most valuable being located on other portions of the land; but what that value is they do not aver, or they are silent as to what is to become of the consideration received by them and those under whom they claim.   There is no suggestion that those sales be repudiated, and yet their prayer is that a partition of the lands lately belonging to William Goble be had; not a part of them, but all of them.   Having from the conveyances above referred to received the money paid as a consideration therefor in a sale that included the mineral interests in the lands therein described, they file this suit asking for an equitable partition.   In an amendment they add:   "All of said defendants should be required to account to petitioners for their pro rata portions thereof, and the same set off against any amounts that a court of equity may find due any of said defendants by reason of any purported deeds or conveyances of any of petitioners or their ancestors, for which their interests may be liable.   Petitioners further say that

when the rights and equities between the parties hereto are determined petitioners will be entitled, not only to their respective shares of the values of the minerals in the lands of William Goble as set out herein, but to a judgment for rents and royalties collected as aforesaid."

Sixty-eight years ago, immediately after the probate of William Goble's will, his devisees took possession of the lands devised to them. The petition says that they took possession of "their surface interest," but that the mineral interest was not possessed by them. The inference sought to be drawn from this is that possession of land by occupying the surface of the earth does not give one possession of what is underneath. The fact remains, however, that each one of the devisees then entered into possession of the land devised to him or to her. These several devisees, beginning in August, 1883, and from time to time thereafter, undertook to convey by deed portions of their respective devises. There are, in all, seven of these deeds, the last one bearing date in December, 1929, and in none of them are the mineral rights excepted. For all these years every one who claimed under William Goble, who undertook to deal with the land devised, treated the mineral rights as belonging to the heir who took under a particular devise, respectively. It was so dealt with by that one of the plaintiffs who was named as a devisee, and by the ancestors of the other plaintiffs, the latter standing in the shoes of other devisees. Sixty-eight years after each devisee took possession of the land devised, and twelve, fifteen, thirty-one, thirty-five, forty-four, and sixty-eight years, respectively, before the filing of this suit, these complainants and those in whose shoes they stand sold their land, their conveyances also conveying, not excepting, the mineral rights. After all this water went over the dam, all flowing in the same direction, they come into a court of equity, praying for an equitable partition of the mineral interests, for an injunction and receiver, and for an accounting, and that the court adjudicate that all mineral interests and all necessary rights for the mining and processing thereof be the equal and joint property of the eight children of William Goble, their heirs, devisees, and assigns.

"Equity gives no relief to one whose long delay renders the ascertainment of the truth difficult, though no legal limitation bars the right." Code, § 37-119. While most frequently the bar of

laches is applied in instances where the long delay has rendered the ascertainment of the truth difficult, the doctrine does not rest on that premise alone. As was well stated in *Citizens & Southern National Bank* v. *Ellis*, 171 *Ga.* 717, 719 (156 S. E. 603) : "In determining whether there has been laches, various things are to be considered, notably the duration of the delay in asserting the claim, the sufficiency of the excuse, if any, offered in extenuation thereof, whether during the delay the evidence of the matters in dispute has been lost or become obscure, whether plaintiff or defendant was in possession of the property in suit during the delay, whether the party charged with laches had an opportunity to act sooner, and whether he acted at the first opportunity; and the delay must not be such as to preclude the court from arriving at a safe conclusion as to the truth of the matters in controversy, and thus make the doing of equity either doubtful or impossible, due to loss or obscuration of evidence of the transaction in issue, or where the lapse of time has been sufficient to create or justify a presumption against the existence or validity of the plaintiff's right, or to justify a presumption that, if the plaintiff was ever possessed of a right, it had been abandoned, waived, or satisfied." The period from which laches is determined is fixed in equity cases according to the circumstances of each case. *Eller* v. *McMillan*, 174 *Ga.* 729 (163 S. E. 910). A case much in point is *Baker* v. *Baker*, 134 *Ga.* 138 (67 S. E. 541). It was there ruled that the petition showed that the cause of action arose in 1868, when the plaintiff was ten years of age; that no suit was filed by him to assert his alleged rights until 1905; and that no sufficient excuse was offered to explain his laches in not earlier discovering and asserting his alleged rights. The court held that "Such long delay, unexcused, would warrant the court in dismissing the petition as asserting a stale demand."

The petition does not disclose the age of the plaintiffs. No minority of any one is shown. The rights which they assert came into being sixty-eight years ago. That length of time, aided by the allegation that immediately on the probate of the will the several devisees went into possession of the land, and commencing that very year, repeated time and again, the devisees selling the entire fee, in some instances a devisee being a grantor and in others a grantee, was enough to justify a presumption that if plaintiffs ever possessed the rights claimed, they had been abandoned, waived, or

satisfied, in view of the fact that all the devisees, save one, have long since died, the sole survivor being one of the plaintiffs who in the year 1883 signed a deed conveying the fee to a part of these lands, and to another part in the year 1911. The plaintiffs sought relief in a court of equity. The defendants by their demurrers invoked the equitable doctrine of laches. The court did not err in dismissing the action.

Judgment affirmed. All the Justices concur.